HENNEFER & WOOD
JAMES A. HENNEFER (SBN 059490)
JOSEPH WOOD        (SBN 103596)
425 California Street, 19th Floor
San Francisco, CA 94104
Telephone: (415) 421-6100
Facsimile:  (415) 421-1815

Attorneys for Plaintiff
GENERAL NANOTECHNOLOGY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GENERAL NANOTECHNOLOGY, LLC, a California Limited Liability Company, )<br><br>                    Plaintiff,                              )<br><br>          vs.                                                        )<br><br>KLA-TENCOR CORPORATION., a Delaware )<br>Corporation; and TOHO TECHNOLOGY )<br>CORPORATION, a Japanese Corporation; )<br><br>                    Defendants.                          )<br>_____ ) | CASE NO.<br><br>**COMPLAINT**<br><br>**(1)**     **Copyright Infringement**<br>        (17 U.S.C. §§101 et seq.)<br><br>(2)     **Patent Infringement**<br>        (35 U.S.C. §§ 1 et seq.)<br><br><br>**DEMAND FOR JURY TRIAL** |

1

**TABLE OF CONTENTS**

2

3   I.    NATURE OF THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4         A.    Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5         B.    The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6         C.    Infringement of the Copyright and Patents . . . . . . . . . . . . . . . . . . . . . . . . . 2

7         D.    Fraudulent Concealment of Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8         E.    Statutory Bases for this Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9   II.   JURISDICTION, VENUE AND COMMERCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10        A.    Original and Exclusive Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11        B.    Venue in the Northern District of California . . . . . . . . . . . . . . . . . . . . . . . . 4

12        C.    Intra District Assignment to San Jose Division . . . . . . . . . . . . . . . . . . . . . . 4

13  III.  THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

14        A.    Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15        B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16  IV.   BACKGROUND AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

17        A.    The GenNano Software and GUI Designs and Functions . . . . . . . . . . . . . . . . 6

18        B.    GenNano Copyrights Software, Patents GUI Designs and Functions, 1994-5 . . . . 7

19        C.    The Limited License Agreement with Tencor, August 1995 . . . . . . . . . . . . . . . 7

20        D.____KLA Acquires Tencor, April 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21        E.    KLA-Tencor Sells FPD Profiler Products to Toho, December 1999 . . . . . . . . . . . 9

22        F.    GenNano Accidentally Informed of Toho's Infringement, September 2002 . . . . . . 9

23        G.    KLA-Tencor Continues to Conceal Its Infringement, 2002-2004 . . . . . . . . . . . . 10

24        H.    The Santa Clara Superior Court Complaint and Proceedings, 2004 . . . . . . . . . . . 10

25        I.    GenNano Discovers KLA-Tencor's Infringement, May 2004 . . . . . . . . . . . . . . . 11

26        J.    GenNano Settles State Court Claims, February 2005 . . . . . . . . . . . . . . . . . . . . 11

27

28

V.      CLAIMS FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      FIRST CLAIM FOR RELIEF
                (Against KLA-Tencor and Toho)
                Copyright Infringement
                (Copyright Act of 1976, 17 U.S.C. §§101 et seq.) . . . . . . . . . . . . . . . . . . 12

        B.      SECOND CLAIM FOR RELIEF
                (Against KLA-Tencor and Toho)
                Patent Infringement
                (35 U.S.C. §§ 1 et seq.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI.     PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VII.    DEMAND FOR JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATION OF INTERESTED ENTITIES OR PERSONS
PURSUANT TO LOCAL RULE 3-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

EXHIBIT A     Examples of GenNano Color Images Produced by Its Software 1995

EXHIBITS B-1, B-2 and B-3     Examples of GenNano Images Being Rotated, Sliced, Back-Lit

EXHIBIT C     Software License Agreement Between GenNano and Tencor, January 9, 1996

EXHIBIT D     Letter from GenNano to Toho, September 12, 2002

EXHIBIT E     Demand Letter from Townsend, Townsend to KLA-Tencor, July 7, 2003

EXHIBIT F     Letter from KLA-Tencor to Townsend, Townsend, July 25, 2003

EXHIBIT G     Letter from Townsend, Townsend to KLA-Tencor, August 18, 2003

EXHIBIT H     Letter from Townsend, Townsend to KLA-Tencor, October 7, 2003

EXHIBIT I     United States Patent No. 6,144,028, Issued November 7, 2000

EXHIBIT J     United States Patent No. 6,281,491, Issued August 28, 2001

EXHIBIT K     United States Patent No. 6,242,734, Issued June 5, 2001

EXHIBIT L     United States Patent No. 229,138, Issued May 8, 2001

1    EXHIBIT M          United States Patent No. 6,369,379, Issued April 9, 2002

2    EXHIBIT N          United States Patent No. 6,232,597, Issued May 15, 2001

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Comes now, plaintiff GENERAL NANOTECHNOLOGY ("GenNano") KLA-TENCOR, Corporation ("KLA-Tencor") and  TOHO TECHNOLOGY CORPORATION ("Toho") by and through their undersigned counsel, and, demanding a jury trial as to all issues triable by a jury, allege and state their complaint against defendants KLA-TENCOR, Corporation ("KLA-Tencor") and  TOHO TECHNOLOGY CORPORATION ("Toho") as follows.

I.    **NATURE OF THIS ACTION**

   A.    **Overview**

1.    This is an action by GenNano against KLA-Tencor and Toho for their unlicensed use of GenNano's copyrighted software code and patented user interfaces on equipment they manufactured and sold.

2.    KLA-Tencor's predecessors and successors have, since 1996, unlawfully used and continue to unlawfully use GenNano's copyrighted software code and patented user interfaces on their expensive semiconductor manufacturing equipment.  They have derived enormous profits therefrom.  They have actively concealed the use from GenNano from 1996 into 2002 until it was disclosed by a Toho employee who contacted GenNano.

   B.    **The Parties**

3.    GenNano is a small company consisting primarily of two scientists and two computer programmers, together with their associates.  GenNano is located in Berkeley, California. GenNano invents, develops and provides software and components for equipment used in semiconductor manufacturing, testing and repair.[1]   It has partnered with the Lawrence Berkeley National Labs and the University of California Berkeley in developing nanotools.  GenNano's software and hardware provides advanced capabilities in imaging, nano-manipulation, nano-fabrication, nano-spectro-photometry, near field optical probes below the aperture (50nm) limit,

---

[1]  This equipment consists of "profilers," "scanners," "wafer or mask repair equipment" and other similarly denominated measurement and mask making/repair devices.  It employs a diamond-tipped stylus which is dragged over the wafer surface, or, in the case of AFM ("Atomic Force Microscopy") equipment, a tip that is moved within 2 nanometers of the wafer surface, in order to provide measurement data for the surface.

*General Nanotechnology v. KLA-Tencor*
COMPLAINTand DEMAND FOR JURY TRIAL               -1-

1  and diamond and other nanotools™ tips and parts.  These are critical for semiconductor and

2  microelectronic manufacture.

3       4.      KLA-Tencor is a supplier of process control and yield management software and

4  hardware for semiconductor and microelectronics manufacture. KLA-Tencor has combined

5  revenues of nearly $2 billion annually and a global workforce of over 5200.  GenNano supplied

6  Tencor Instruments with its software and technology under a very limited license in 1996.  Tencor

7  Instruments was merged into KLA Corporation in 1997.  KLA-Tencor then unlawfully

8  misappropriated GenNano's software and technology, using it without a license in a large number

9  of units of its expensive equipment and concealing its use of such software from GenNano.

10      5.      Toho is a Japanese corporation located in Nagoya, Japan.  It describes itself as "a

11  large, aggressive, solutions-oriented technology company" "with a history of growth since 1819."

12  It has sales of $270 million and 500 employees. It acquired GenNano's software and patented user

13  interfaces from KLA-Tencor in 1999.  It used and still uses them, without a license, in equipment it

14  supplies to the United States, European and Asian markets. This includes equipment for flat panel

15  television and display screen manufacture.

16      **C.      Infringement of Copyright and Patents**

17      6.      Tencor Instruments acquired the software code from GenNano in 1996 under a

18  limited license.  This license did not allow the software's  use by KLA-Tencor or Toho and did not

19  confer any patent rights.  KLA-Tencor nevertheless used GenNano's software code in equipment it

20  sold, without any license.  KLA-Tencor sold one of its product lines which used such software to

21  Toho.  Toho then used such software in equipment it sold, without a license.  KLA-Tencor also

22  employed GenNano's patented inventions to develop new software graphic user interfaces ("GUI")

23  for its equipment.  KLA-Tencor's GUI was expressly designed by KLA-Tencor to have the same

24  "look and feel" of GenNano's patented features and functions.

25      **D.      Fraudulent Concealment of Infringement**

26      7.      GenNano did not know and could not reasonably have been expected to know about

27  Toho's unlawful use of its copyrighted software and patented user interfaces until on or about

28  September 1, 2002, when John Coombs of Toho made inquiries to GenNano about licensing

GenNano software Toho had acquired through the purchase of an equipment product line from KLA-Tencor.

8.    GenNano did not know and could not reasonably have been expected to know about KLA-Tencor's unlawful use of its copyrighted software and patented user interfaces until on or about June 11, 2004, when KLA-Tencor, in connection with state court litigation, produced a user manual for one of its pieces of equipment.  This manual suggested to GenNano that KLA-Tencor was engaging in the unlicensed use of GenNano software and interfaces.  KLA-Tencor has, since that time, continued to deny use of the software and interfaces.  KLA-Tencor has not allowed GenNano inspect its software, despite discovery requests by GenNano in a state court action against it.

9.    KLA-Tencor has taken many active steps to conceal from GenNano both its unlawful use and Toho's unlawful use of GenNano's copyrighted software and patented user interfaces.

10.    In or about 1997 Tencor employees, who became employees of KLA-Tencor, told GenNano that there were no plans to use GenNano software and user interfaces in the future on their equipment.  When KLA acquired Tencor in 1997, KLA-Tencor gave no notice to GenNano that it intended to continue to use GenNano software and interfaces, although it was required to do so.  In 1999, when KLA-Tencor sold an equipment line to Toho, which equipment line used GenNano software and interfaces, KLA-Tencor failed to advise GenNano of the transfer and use of such software and interfaces.  GenNano did not discover this until September 2002.

11.    After GenNano's discovery of Toho's unlawful use of its software and user interfaces in September 2002, KLA-Tencor continued to actively conceal both Toho's and its own unlawful use of GenNano's software and interfaces up until June 2004, by representing that only Toho equipment employed such software and interfaces and that only three (3) pieces of  such equipment had used GenNano's software and interfaces.   GenNano reasonably relied on KLA-Tencor's concealment and misrepresentations and could not practicably have been aware of such concealment and misrepresentation through inquiry notice until it acquired one of KLA-Tencor's user guides on June 11, 2004 in the state court action.

**E.      Statutory Bases for this Action**

12.      This action is brought pursuant to: (a) the United States Copyright Act of 1976, 17 U.S.C. §§101 et seq.; and (b) the patent laws of the United States, 35 U.S.C. §§ 1 et seq., in order to obtain an accounting, damages and injunctive relief against defendants.

**II.      JURISDICTION, VENUE AND COMMERCE**

**A.      Original and Exclusive Jurisdiction**

13.      This action is for infringement of a United States copyright and United States patents.  This Court has original and exclusive jurisdiction of these copyright patent infringement causes under 28 U.S.C. § 1338(a). The jurisdiction of this court is therefore invoked and this action is instituted under the provisions of Sections 1331 and  1338 of Title 28, United States Code (28 U.S.C. §§ 1331 and 1338) federal question jurisdiction and exclusive jurisdiction over copyrights and patents.  It is brought to declare the rights of plaintiff, for an accounting and to recover damages sustained by plaintiff as a result of defendants' unlawful actions and to obtain injunctive relief against defendants.

14.      The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**B.      Venue in the Northern District of California**

15.      Venue is proper in the Northern District of California under 28 U.S.C. §§ 1391(c), 1391(d) and 1400(b).   Defendant KLA-Tencor resides, has its principal place of business, has significant contacts, is subject to personal jurisdiction and has committed acts of infringement in this district.  Defendant Toho is an alien, has significant contacts and has committed acts of infringement in this district.

**C.      Intra District Assignment to San Jose Division**

16.      This action is appropriate for assignment to the San Jose Division of this Court pursuant to Local Rule 3-2(e)  because it arose and a substantial part of the events or omissions giving rise to the claims herein occurred within Santa Clara County.

III.   THE PARTIES

A.   Plaintiffs

17.   General Nanotechnology, LLC ("GenNano") is a limited liability company incorporated and in good standing under the laws of the State of California.  GenNano has its principal place of business in Berkeley, California.  GenNano is a technology leader in  creating and developing hardware and software that allows viewing, inspecting, manipulating and working on objects which are measured in nanometers ($10^{-9}$ or .000000001 meters).  GenNano partnered with Lawrence Berkeley National Labs and the University of California Berkeley in a three year nanotools™ tips development program. GenNano is a principal supplier of proprietary diamond technologies to RAVE LLC, the manufacturer of the world's first commercial SPM ("scanning probe microscopy") based nano-machining system. RAVE is also a licensee of GenNano's ground-breaking inventions in SPM nano-machining and control software.  GenNano has developed advanced software for mixed Confocal/AFM ("atomic force microscopy") imaging systems. In the Micro-Fab/Coating area, GenNano is engaged as an Associate of the Berkeley MicroFab laboratories and is developing diamond MEMS ("micro-electro-mechanical systems"), including AFM tips, and nano-machining related special parts. GenNano worked with NIST (National Institute of Standards and Technology – formerly the National Bureau of Standards) to provide micro-machined force standards for the commercial AFM industry.

B.   Defendants

18.   KLA-Tencor Corporation ("KLA-Tencor") is a corporation, organized under the laws of the State of Delaware,  with its principal place of business in San Jose, California.  KLA-Tencor was formed by the merger of KLA Instruments and a subsidiary of KLA which had acquired Tencor Instruments.  KLA-Tencor's products use technology, including software and equipment, which GenNano develops.  KLA-Tencor has admitted selling equipment with GenNano's copyrighted software. KLA-Tencor software and equipment provides inline wafer defect monitoring; reticle and photomask defect inspection; critical dimension metrology; wafer overlay; film and surface measurement; and overall yield and fab-wide data analysis.

1    19.    Toho Technology Corporation ("Toho") is a corporation, organized under the laws of

2    Japan, with its principal place of business in Nagoya, Japan.  Toho's products use technology,

3    including software and equipment, which GenNano develops. Toho has admitted shipping

4    equipment with GenNano's copyrighted software.  Toho features on its website an FP-20 profiler

5    for measuring LCD's (liquid crystal displays) step height and roughness, which profiler employs

6    GenNano's copyrighted software.

7    **IV.    BACKGROUND AND FACTS**

8    **A.    The GenNano Software and GUI Designs and Functions**

9

10    20.     GenNano's software consisted of two "libraries" of compiled source code (known

11    as "Dynamic Link Libraries" or "DLLs") and the calls to these DLLs  (known as "Application

12    Programming Interfaces" or "APIs")  Source code was provided which functioned as test code for

13    the DLLs in Tencor's 16 bit environment. (The DLLs, APIs and source code are referred to herein

14    as the "Software".)   The Software enables semiconductor manufacturing, testing and repair

15    equipment into which it is installed to produce, on a computer screen, a variety of 2-dimensional

16    ("2-D") and 3-dimensional ("3-D") images of objects being manufactured, tested or repaired (*e.g.*,

17    masks, chips, wafers, flat panels).  GenNano's color images show surface variations down to  $10^{-9}$

18    (one nanometer). [2]   Examples of GenNano color images produced by the Software are attached as

19    **EXHIBIT A** to this complaint and made a part hereof

20    21.    The GenNano Software provides a multitude of functions and allows the 2-D and 3-

21    D images to be manipulated in a variety of ways.  They allow the images to be rotated, sliced into

22    cross-sections, given varied colors,  back-lit from various angles to show contours, to be magnified

23    and to be measured.  Examples of the GenNano images being rotated, sliced into cross sections and

24    back-lit by a movable light source to show contours are attached as **EXHIBIT B-1, B-2 AND B-3**

25    to this complaint and made a part hereof.

26    _____

27    [2]  $10^{-10}$ or one Ängstrom is the approximate diameter of an atom.

28

22.     The GenNano Software in 1995 was designed for and operated on 32 bit operating systems.  This made the Software suitable for generations of operating systems after Windows 3.0, which includes such  Microsoft operating systems as Windows 98, Windows NT, Windows 2000 and Windows XP).   The GenNano Software was fitted with a utility that allowed Tencor's 16 bit system being run on Tencor's P-10 Profiler to use the Software.  However, the GenNano Software could be, and subsequently was used by KLA-Tencor, without a license, on equipment which ran in a 32 bit environment.

**B.     GenNano Copyrights Software, Patents GUI Designs and Functions, 1994-5**

23.     GenNano's Software, including all of the code for its dynamic link libraries ("DLL") and API ("Application Programming Interface") calls to the DLL's, and including some of its GUI ("Graphic User Interface") is an original creative work of authorship and is copyrightable subject matter.  GenNano applied to the Copyright Office of the United States and duly registered the copyright in the Software in the United States Copyright Office on June 27, 1995.

24.     On July 28, 1994 GenNano filed a patent application for novel and non-obvious design and functional features of its GUI.  Through continuations of this patent application and subsequent applications, continuations and divisionals, as set forth below at paragraphs 59 through 71, GenNano was duly issued six (6) valid patents. These were United States Patents Nos. 6,144,028,  6,281,491, 6,242,734,  6,229,138, 6,232,597 and  6,369,379.

**C.     The Limited License Agreement with Tencor, August 1995**

25.     On August 18, 1995, GenNano and Tencor entered into a memorandum of understanding regarding limited use by Tencor of GenNano's Software.  Under this memorandum GenNano supplied to Tencor GenNano's Software for testing and development on Tencor's P-10 Profiler.  On January 9, 1996, GenNano and Tencor entered into a "Software License Agreement" ("SLA").  A true copy of the License Agreement is attached to this complaint as **EXHIBIT C** and

made a part hereof.

26.     The SLA granted "to Tencor" a non-exclusive license to use the GenNano Software "on all equipment sold by Tencor and its wholly owned subsidiaries." (SLA, ¶ 3) (Emphasis supplied unless otherwise indicated.)   This restriction in the license grant again was made explicit in the provision which stated that "[t]he license does not extend to (i) other equipment sold by companies (if any) hereafter acquiring Tencor or substantially all of Tencor's business or assets." (SLA, ¶ 3)

27.     The SLA further provided that "use of Software is limited to operation on data acquired using Tencor equipment, or imported in Tencor proprietary data formats, unless otherwise agreed to in writing by GenNano."   The SLA also provided that "[t]he license does not extend to . . . (iii) non-Tencor equipment."  (SLA, ¶ 3) GenNano nver agreed in writing (or otherwise) to any modification of the license granted in the SLA.

28.     The restrictions limiting the use of the Software to Tencor equipment are commonly used in technology license agreements to prevent widespread use of technology by a larger acquiring company, when limited use, only by the acquired company, only on its own equipment models was all the parties intended to grant.  This was what was intended and granted under the SLA. These restrictions were never modified or waived.

29.     The SLA later provided that "neither this Agreement nor any rights hereunder, in whole or in part, shall be assignable or otherwise transferable by either party without the express written consent of the other party." (SLA, ¶ 22.2)  GenNano never gave Tencor written (or any other form of) consent to the assignment or transfer of any rights under the SLA.

30.     The SLA provided additionally that:  "[e]ither party may assign this Agreement to an entity which acquires, directly or indirectly substantially all of the assets or merges with it, provided, such acquiring or merging entity agrees to be bound by all the terms and conditions of this Agreement."  (SLA, ¶ 22.2)  KLA-Tencor never agreed to be bound by the SLA nor  gave any form of notice whatsoever to GenNano of any claimed assumption of rights under the SLA.

**D.      KLA Acquires Tencor, April 1997**

31.      Effective April 30, 1997, KLA acquired the stock of Tencor through one of its wholly-owned subsidiaries by exchanging KLA common stock for Tencor shares.  "KLA [then] changed its name to KLA-Tencor Corporation."  (KLA, Securities and Exchange Commission, 10-K Report, filed June 30, 1997)

32.      In January 1996, prior to KLA acquiring Tencor in April 1997, and unknown to GenNano, KLA-Tencor began selling a model P-11 Profiler which contained GenNano's copyrighted Software and infringed GenNano's copyright for such Software and patents.  The copyright and patent infringement by KLA-Tencor after the April 1997 acquisition of Tencor, also unknown to GenNano, was expanded to the use of GenNano Software to many models of non-Tencor equipment made and sold by KLA-Tencor.

**E.      KLA-Tencor Sells FPD Profiler Products to Toho, December 1999**

33.      Under an "Asset Purchase and License Agreement" dated December 3, 1999, KLA-Tencor sold to Toho its flat panel display profiler product line which used GenNano's Software and purported to give Toho the rights to use, copy, distribute and sublicense GenNano's Software. The Asset Purchase and License Agreement was required by its terms to be kept confidential, and , its existence and terms were kept from GenNano.

**F.      GenNano Accidentally Informed of Toho's Infringement, September 2002**

34.      KLA-Tencor and Toho fraudulently concealed from GenNano material facts upon which the causes of action in this complaint against Toho depend.  GenNano lacked knowledge of these material facts, lacked the means of obtaining such knowledge and could not, with reasonable care, have discovered these facts before September 2, 2002.

35.      On or about September 2, 2002, John Coombs, an employee of Toho telephoned GenNano and advised that employees of Toho had seen a GenNano copyright notice in software transferred by KLA-Tencor to Toho in 1999 and that Toho wished to license that software.  Until that time GenNano had no knowledge of and no reason to believe or inquire into infringement by

Toho of its Software copyright or violation of its patents.

### G.    KLA-Tencor Continues To Conceal Its Infringement, 2002-2004

36.    GenNano, upon learning of Toho's use of its Software, wrote to Toho and then to KLA-Tencor's president on September 12, 2002. A copy of this letter is attached to this complaint as **EXHIBIT D**. The letter was not answered.  GenNano's counsel contacted KLA-T's intellectual property in-house counsel who refused to disclose extent of the use of GenNano Software by Toho, but insisted that GenNano had to give KLA-Tencor and Toho unlimited licenses.

37.    GenNano retained the law firm of Townsend & Townsend & Crew ("Townsend")to investigate, independently whether Toho had infringed GN's copyright and patents.  Townsend, based on their investigation, concluded there was clear misuse of GenNano software by Toho.  A demand letter from Townsend was written to KLA-Tencor on July 7, 2003.  A copy of this demand letter is attached to this complaint as **EXHIBIT E**.   KLA-Tencor responded to the Townsend letter on July 25, 2003.  A copy of the KLA-Tencor July 25 response is attached to this complaint as **EXHIBIT F**.  Townsend replied by letter of August 18, 2003.  A copy of Townsend's August 18 response is attached to this complaint as **EXHIBIT G**.  When no response was forthcoming from KLA-Tencor to this August 18 letter, Townsend wrote a further letter on October 7, 2003.  A copy of Townsend's further letter of October 7 is attached to this complaint as **EXHIBIT H**.

38.    Despite all of these written requests to KLA-Tencor by GenNano that it disclose to GenNano, as required in the SLA, any infringement of rights in the Software that come to its attention, KLA-Tencor refused and continues to refuse to make any disclosures to GenNano whatsoever in this regard.

### H.    The Santa Clara Superior Court Complaint and Proceedings, 2004

39.    On January 16, 2004 GenNano filed a complaint against KLA-Tencor and Toho in Santa Clara Superior Court alleging state law causes of action based on the SLA ("Santa Clara State Action").  The complaint contains state law causes of action against KLA-Tencor for breach of the SLA and the covenant of good faith and fair dealing (C/A 1,2); against Toho for interference

with contract (C/A 4); and against both KLA-Tencor and Toho for unjust enrichment, misappropriation of confidential and proprietary information and trade secrets under California Civil Code §§ 3426-3426.11 and for fraud and concealment (C/A 3, 5 -9).

**I.     GenNano Discovers KLA-Tencor's Infringement, May 2004**

40.     Despite written requests from GenNano to Toho that they disclose to GenNano any infringement of their copyright and patents of which they were aware, Toho has refused and continues to refuse to make any disclosures to GenNano in this regard.

41.     On May 7, 2004, pursuant to a meeting of counsel and parties in the Santa Clara State Action and a demonstration by KLA-Tencor personnel of their software, it appeared that the KLA-Tencor software being demonstrated may have infringed GenNano's Software copyright and patents.  On June 11, 2004, KLA-Tencor produced in the Santa Clara State Action a manual for one of its pieces of equipment from which it also appeared that KLA-Tencor may have infringed GenNano's Software copyright and patents.

42.     On July 27, 2004 GenNano served on KLA-Tencor its "Request for Inspection and Production of Documents and Things" in the Santa Clara State Action, which request sought to determine the scope and extent of use of GenNano's Software by inspection of manuals, user guides, programs, code and sales records of equipment which may have contained GenNano's Software.  While some manuals and guides were produced thereafter, KLA-Tencor failed and refused to produce programs, code and sales records from which GenNano could discover the scope and extent of the use by KLA-Tencor of its copyrighted Software and patents.

43.     On September 29, 2004, GenNano advised KLA-Tencor and Toho that it believed it had federal copyright and patent claims and that it would be filing a complaint for those claims.

**J.     GenNano Settles State Court Claims, February 2005**

44.     On January 28, 2005 KLA-Tencor and Toho offered a settlement to GenNano for release of "all claims and causes of action, whether known or unknown" which settlement would have included the federal copyright and patent claims in this action.  GenNano declined this

1    settlement offer.

2        45.    On February 3, 2005 KLA-Tencor offered a much more limited settlement, offering

3    to settle only the "claims pending against KLA-Tencor in the current [Santa Clara State Action]

4    litigation" under California Code of Civil Procedure section 998.  This offer was accepted by

5    GenNano on February 7, 2005.  A settlement agreement, releasing just the state court claims

6    pending in the Santa Clara State Action, without a general release or a waiver of any other claims,

7    pursuant to California Code of Civil Procedure section 1542,  was executed by the parties and the

8    Santa Clara State Action was dismissed with prejudice.  This was done with the express written

9    understanding that "patent and copyright claims, which were not (and jurisdictionally could not be)

10   before the [Santa Clara Superior] court" were "not being released."

11

12   **VI. CLAIMS FOR RELIEF**

13

14        A.    **FIRST CLAIM FOR RELIEF**
                **(Against KLA-Tencor and Toho)**
15              **(Copyright Infringement)**
                **(17 U.S.C. §§101 et seq.)**
16

17        46.    Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 45,

18   inclusive, above, to the extent they are consistent with the facts alleged in this cause of action,

19   with the same force and effect as if said paragraphs were herein set forth in full.

20        47.    GenNano is in the business of developing, manufacturing and distributing, in

21   interstate and foreign commerce, computer programs recorded on magnetic medium diskettes or

22   CD-ROMs ("discs") for use on microcomputers of the type commonly referred to as "personal

23   computers." The Software described herein is one of such computer programs.  The Software

24   described here in is one of GenNano's commercially successful computer programs.

25        48.    The Software, including all of the code for its DLLs, API calls and GUI is an

26   original creative work of authorship and is copyrightable subject matter.

27

28

49.     GenNano applied to the Copyright Office of the United States and duly registered the copyright in the Software in the United States Copyright Office on June 27, 1995.  GenNano is the owner of the copyright on the Software.  The registration of the Software is  evidenced by the certificate of registration issued by the Register of Copyrights dated and identified as follows: Registration Number: Txu-697-176; Title: ScanProbe; Description: computer program; Author and Claimant: General Nanotechnology, LLC; Registration date: 27Jun95.

50.     KLA-Tencor and Toho caused GenNano's copyrighted Software (a) to be copied for the purpose of research and development of other software programs; (b) to be copied onto the hard disk drive of their equipment; (c) to be "uploaded" or copied from the hard drive into random access memory ("RAM"); and (d) to be sold and distributed with their equipment.

51.     This action arises out of the illegal copying and distribution by KLA-Tencor and Toho of the Software, identified above in paragraphs 23 and 47 through 50 of this complaint.

52.     Under the copyright law of the United States, 17 U.S.C.A. §§101 et seq. ("Copyright Law") no copying is legal unless specifically authorized by the copyright owner.

53.     Under the Copyright Law, the copyright owner has the exclusive right to make copies of a copyrighted program, and to distribute copies of that program to the public.

54.     KLA-Tencor and Toho infringed GenNano's exclusive rights in the Software by: (a) copying the Software for the purpose of research and development of other software programs; (b) loading the Software onto the hard drives of their equipment, which caused a new copy of each program to be made; (c) "uploading" the Software from the hard drives into RAM; and (d) distributing those copies to the public.

55.     The acts of KLA-Tencor and Toho in copying GenNano's' copyrighted Software computer programs and distributing copies to the public, were in every instance unauthorized by GenNano and constituted copyright infringement under the Copyright Laws.

56.     KLA-Tencor's and Toho's infringement of GenNano's' copyright was willful.

57.     By reason of the above, GenNano is entitled to injunctive and monetary relief

*General Nanotechnology v. KLA-Tencor*
COMPLAINTand DEMAND FOR JURY TRIAL          -13-

pursuant to 17 U.S.C.A. §§502 et seq., for KLA-Tencor's and Toho's infringement of GenNano's Software copyright.

WHEREFORE, GenNano prays judgment against KLA-Tencor and Toho as set forth below.

### B.    SECOND CLAIM FOR RELIEF
### (Against KLA-Tencor)
### (Patent Infringement)
### (35 U.S.C. §§ 1 et seq.)

58.    Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 57 inclusive, above, to the extent they are consistent with the facts alleged in this cause of action, with the same force and effect as if said paragraphs were herein set forth in full.

59.    On July 28, 1994, Vic B. Kley, as the inventor and GenNano, as the assignee, filed United States patent application Serial No. 08/281,883.  On March 29, 1995 a continuation-in-part of the '883 patent application was filed as United States patent application No. 08/412,380.

60.    On July 1, 1997 a continuation-in-part of the '380 patent application was filed as United States patent application No. 08/885,014 and United States Patent No. 6,144,028 was issued pursuant to this patent application on November 7, 2000 ('028 Patent).

61.    On February 9, 1999 a continuation of the '014 patent application was filed as United States Patent Application No. 09/249,567 and United States Patent No. 6,281,491 was issued pursuant to this patent application on August 28, 2001 ('491 Patent).

62.    On September 8, 2000 a divisional of the '567  patent application was filed as United States Patent Application No. 09/659,023 and United States Patent No. 6,242,734 was issued pursuant to this patent application on June 5, 2001 ('734 Patent).

63.    On September 8, 2000 a divisional of the '567  patent application was filed as United States Patent Application No. 09/657,786 and United States Patent No. 6,229,138 was issued pursuant to this patent application on May 8, 2001 ('138 Patent).

64.    On September 8, 2000 a divisional of the '587 patent application was filed as United States Patent Application No. 09/658,691 and United States Patent No. 6,369,379 was issued pursuant to this patent application on April 9, 2002 ('379 Patent).

65.    On September 11, 2000 a divisional of the '587 patent application was filed as United States Patent Application No. 09/659,538 and United States Patent No. 6,232,597 was issued pursuant to this patent application on May 15, 2001('597 Patent).

66.    The '028 Patent, entitled "Scanning probe microscope assembly and method for making confocal, spectrophotometric, near-field, and scanning probe measurements and associated images" duly and legally issued on November 7, 2000.  A true and correct copy of the '028 Patent is attached to this complaint as **EXHIBIT I**.

67.    The '491 Patent, entitled "Scanning probe microscope assembly and method for making confocal, spectrophotometric, near-field, and scanning probe measurements and associated images" duly and legally issued on August 28, 2001.  A true and correct copy of the '491 Patent is attached to this complaint as **EXHIBIT J**.

68.    The '734 Patent, entitled "Scanning probe microscope assembly and method for making confocal, spectrophotometric, near-field, and scanning probe measurements and associated images" duly and legally issued on June 5, 2001.  A true and correct copy of the '734 Patent is attached to this complaint as **EXHIBIT K**.

69.    The '138 Patent, entitled "Scanning probe microscope assembly and method for making confocal, spectrophotometric, near-field, and scanning probe measurements and associated images" duly and legally issued on May 8, 2001.  A true and correct copy of the '138 Patent is attached to this complaint as **EXHIBIT L**.

70.    The '379 Patent, entitled "Scanning probe microscope assembly and method for making confocal, spectrophotometric, near-field, and scanning probe measurements and associated images" duly and legally issued on April  9, 2002.  A true and correct copy of the '379 Patent is attached to this complaint as **EXHIBIT M**.

71.     The '579 Patent, entitled "Scanning probe microscope assembly and method for making confocal, spectrophotometric, near-field, and scanning probe measurements and associated images" duly and legally issued on May 5, 2001.  A true and correct copy of the '579 Patent is attached to this complaint as **EXHIBIT N**.

72.     GenNano is the owner of the '028 Patent, '491 Patent, '734 Patent, '138 Patent, '379 Patent and '597 Patent.

73.     Pursuant to 35 U.S.C. § 282, the '028 Patent, '491 Patent, '734 Patent, '138 Patent, '379 Patent and '597 Patent is each presumed valid.

74.     KLA-Tencor and Toho have been and continue to infringe the '028 Patent, '491 Patent, '734 Patent, '138 Patent, '379 Patent and '597 Patent, either directly, contributorily, and/or by inducement, in violation of 35 U.S.C. § 271, by performing proscribed activities, including making, using, selling, offering for sale, and/or importing infringing devices that are covered by the '028 Patent, '491 Patent, '734 Patent, '138 Patent, '379 Patent and '597 Patent to customers throughout the United States.

75.     GenNano is informed and believes and thereon allege that KLA-Tencor and Toho's infringement of the '028 Patent, '491 Patent, '734 Patent, '138 Patent, '379 Patent and '597 Patent, and each of them, has been and continues to be willful, wanton, deliberate, without license, and with full knowledge and awareness of GenNano's rights.

76.     KLA-Tencor's and Toho's infringement of the '028 Patent, '491 Patent, '734 Patent, '138 Patent, '379 Patent and '597 Patent, and each of them, has damaged GenNano in an amount to be proven at trial.

77.     Unless restrained and enjoined by this Court, KLA-Tencor and Toho will continue their acts of infringement and the resulting damage to GenNano will be substantial, continuing, and irreparable.

WHEREFORE, GenNano prays judgment against KLA-Tencor and Toho jointly and severally as set forth below.

1    VII.    **PRAYER FOR RELIEF**

2        GenNano prays for judgment against KLA-Tencor and Toho jointly and severally as

3    follows:

4    1.    On the First Claim for Relief, GenNano respectfully requests that this Court:

5

6        A.    Issue a preliminary and permanent injunctions enjoining KLA-Tencor, Toho and

7    those acting in concert or participation with them from infringing GenNano's copyright, including,

8    but not limited to, unauthorized use, copying and/or distribution of GenNano's copyrighted

9    Software, and from encouraging and aiding others to commit such infringing acts.

10       B.    Enter a judgment ordering the destruction of all illegal copies of GenNano's

11   copyrighted Software.

12       C.    Award GenNano, at its election, either actual or statutory damages against KLA-

13   Tencor and Toho..

14       D.    Award GenNano its costs, expenses, and disbursements in this action, including

15   reasonable attorneys' fees pursuant to 17 U.S.C.A. § 505.

16   2.    On the Second Claim for Relief, GenNano respectfully requests that this Court:

17

18       A.     Enter a judgment that KLA-Tencor and Toho and each of them have infringed the

19           '028 Patent, '491 Patent, '734 Patent, '138 Patent, '379 Patent and '597 Patent and

20           each of them;

21       B.    Enter a judgment that KLA-Tencor's and Toho's  infringement of the '028 Patent,

22           '491 Patent, '734 Patent, '138 Patent, '379 Patent and '597 Patent and each of them

23           is and has been willful and deliberate;

24       C.    Issue preliminary and permanent injunctions prohibiting KLA-Tencor and Toho,

25           and each of them and their officers, directors, employees, agents, licensees,

26           servants, successors, and assigns, and any and all persons acting in privity or in

27           concert with them from further acts of infringement of the '028 Patent, '491 Patent,

28

'734 Patent, '138 Patent, '379 Patent and '597 Patent and each of them;

D.    Award damages against KLA-Tencor and Toho and in favor of GenNano in an amount adequate to compensate Plaintiffs for KLA-Tencor's and Toho's infringement of the '028 Patent, '491 Patent, '734 Patent, '138 Patent, '379 Patent and '597 Patent, and each of them, pursuant to 35 U.S.C. § 284;

E.    Increase damages by three times the amount found or assessed due to KLA-Tencor's and Toho's  willful infringement, pursuant to 35 U.S.C. § 284;

F.    Award GenNano its costs, expenses, and disbursements in this action, including reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285, due to the exceptional circumstances presented by KLA-Tencor's and Toho's willful infringement of the '028 Patent, '491 Patent, '734 Patent, '138 Patent, '379 Patent and '597 Patent, and each of them;

G.    Award GenNano interest on the amount of damages found against KLA-Tencor and Toho, and each of them, including pre-judgment and post-judgment interest, pursuant to 35 U.S.C. § 284;

3.    For an award to GenNano of such other and further relief as this Court deems just and proper.

Dated: March 29, 2005                               HENNEFER & WOOD


                                                    By_____
                                                          James A. Hennefer

                                                    Attorneys for Plaintiff
                                                    GENERAL NANOTECHNOLOGY

*General Nanotechnology v. KLA-Tencor*
COMPLAINTand DEMAND FOR JURY TRIAL              -18-

1

## DEMAND FOR JURY TRIAL

2

3         Pursuant to the Seventh Amendment to the Constitution of the United States, Rule 38(a)

4   and (b) of the Federal Rules of Civil Procedure, and similar provisions of any state of the United

5   States that apply, plaintiff demands a trial by jury of all issues triable of right by jury.

6

7   Dated: March 29, 2005                    HENNEFER & WOOD

8

9                                            By_____

10                                              James A. Hennefer

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2    PURSUANT TO LOCAL RULE 3-16

3

4

5    Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons,

6    associations of persons, firms, partnerships, corporations (including parent corporations), or other

7    entities (i) have a financial interest in the subject matter in controversy or in a party to the

8    proceeding, or (ii) have non-financial interest in that subject matter or in a party that could be

9    substantially affected by the outcome of this proceeding: Metadigm, LLC, George Helmholz, Ian

10   Lovejoy, Fred Faloona, Ed Morse, Jennifer Burch and Rorick Sellers.

11

12   Dated: March 29, 2005                    HENNEFER & WOOD

13

14                                     By_____

15                                          James A. Hennefer

16

17

18

19

20

21

22

23

24

25

26

27

28

*General Nanotechnology v. KLA-Tencor*
COMPLAINTand DEMAND FOR JURY TRIAL            -20-