IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GENERAL NANOTECHNOLOGY, LLC,
a California Limited Liability Company,

    Plaintiff,

  v.

KLA-TENCOR CORPORATION, a Delaware Corporation, and TOHO TECHNOLOGY CORPORATION, a Japanese Corporation,

    Defendants.

No. C 05-01403 WHA

**CLAIM CONSTRUCTION ORDER**

## INTRODUCTION

This is a claim-construction order for United States Patent Nos. 6,144,028, 6,242,734, 6,281,491, 6,369,379, 6,396,054 and 6,515,277 ("the '028 patent," "the '734 patent," "the '491 patent," "the '379 patent," "the '054 patent" and "the '277 patent," respectively). All other terms having been resolved by agreement, the claim term "endpoint cursors" is construed herein. A technology tutorial, a full round of briefing, and a *Markman* hearing preceded this order.

## STATEMENT

On September 30, 2005, plaintiff General Nanotechnology, LLC ("GenNano") filed its first amended complaint alleging that defendants KLA-Tencor Corporation and Toho

1  Technology Corporation infringed certain of plaintiff's copyrights and also alleging that KLA-
2  Tencor infringed plaintiff's patents.  GenNano develops and provides software and components
3  for equipment used in semiconductor manufacturing, testing and repair.  Defendant
4  KLA-Tencor Corporation is a supplier of software and hardware for semiconductor and
5  microelectronics manufacture.  Plaintiff alleged that KLA-Tencor violated 35 U.S.C. 271 by
6  making, using, selling, offering for sale and/or importing infringing devices that are covered by
7  the patents in suit.

These patents all provide software inventions for use in scanning-probe microscopes that gather, process and display image data.  The software tools described in the patents allow for manipulation of images produced by the microscopes.  The '491 and '054 patents are directed to a software tool that allows a microscope user to select and manipulate a cross section of the microscope's image data.  The '379 and '277 patents are directed to a software tool for filtering the scan data by performing a linear or "Fourier" transform and a series of inverse Fourier transforms.  Finally, the '028 and '734 patents are directed to a software tool for coloring elements of the image data.  All of these patents stem from the same parent application and contain virtually identical prefatory language.

**ANALYSIS**

**1.   LEGAL STANDARD.**

Claim construction is a matter of law to be decided by a judge, not a jury.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388 (1996).  Courts must give words in the claim their ordinary and customary meaning, which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc).

Where this ordinary and customary meaning is not immediately clear, courts must primarily look to intrinsic evidence (*i.e.*, the claims, the specification and the prosecution history) to determine the meaning.  *Id*. at 1314.  With respect to the specification, although a difficult task, a court must distinguish "between using the specification to interpret the meaning

2

1  of a claim and importing limitations from the specification into the claim." *Id*. at 1323.  The
2  latter is not permissible.
3      Although courts have the discretion to consider extrinsic evidence, including expert and
4  inventor testimony, dictionaries and scientific treatises, such evidence is "less significant than
5  the intrinsic record in determining the legally operative meaning of claim language." *Id*. at1317
6  (citation omitted).  "The construction that stays true to the claim language and most naturally
7  aligns with the patent's description of the invention will be, in the end, the correct
8  construction." *Id*. at 1315.

    **2.**    **APPLICATION.**

10      In accordance with these principles of claim construction, this order construes the
11  disputed term "endpoint cursors." This term is used frequently in the claims of the '491 patent
12  and the '054 patent.  Claim 1 of the '491 patent states (emphasis added):

```
1.  A microscope assembly comprising:
scanning and measurement means to:
        scan an object;
        make measurements of the object while the object is
                scanned; and
        generate measurement data representing the measure-
                ments;
a pointing device;
a controller configured to:
        control the scanning and measurement means in scan-
                ning and making measurements of the object;
        generate first image data representing a first image
                associated with the object in response to the mea-
                surement data;
generate second image data representing a second image
        of the first image and a measuring tool projected on the
        first image in response to the first image data, the
        measuring tool including endpoint cursors that can be
        manipulated with the pointing device to position the
        measuring tool so as to select a cross section of the first
        image between the endpoint cursors;
        generate cross section data representing cross section
                information about the selected cross section between
                the endpoint cursors of the measuring tool;
        format the second image data for display of the second
                image; and
        format the cross section data for display of the cross
                section information; and
a display configured to:
        display the second image in response to the formatted
                second image data; and
```

>display the cross section information in response to the
>formatted cross section data.

GenNano proposes that "endpoint cursors" should be construed as "end points that, when selected with a pointing device, become cursors that can be positioned with the pointing device." KLA-Tencor offers a two-part definition. According to defendant, "cursor" means "a visual cue on a display that indicates position." In turn, the term "endpoint cursors" purportedly means "user-manipulated cursors used to define the position of opposing ends of a measuring tool on an image." In its opposition brief, defendant notes that its proposed construction can be simplified to "visual cues defining the ends." This order finds that defendant's proposed construction, as modified herein, "stays true to the claim language and most naturally aligns with the patent's description of the invention."

The difference between the parties' proposed constructions turns on whether a user "creates" the endpoint cursors by clicking on two endpoints, or whether the endpoint cursors are a component of the measuring tool described in the claim language. On plaintiff's view, the endpoint cursors are not cursors at all *until* a user clicks on two points. Then these two points *become* cursors—a sort of computerized actualization.

The fatal flaw in plaintiff's interpretation is that the plain language of the claim *requires* that the measuring tool *include* endpoint cursors. The claim language quoted above describes a measuring tool which is transposed *onto* the initial image created by the microscope. In the language of the claims, this is a "second image"—basically the microscopic data image with a computerized ruler including the endpoint cursors placed on top of it.

The description of this measuring tool in the claim indicates that the endpoint cursors are a part of the computerized ruler: "The measuring tool including endpoint cursors that can be manipulated with the pointing device." The straightforward meaning of this claim is that these endpoint cursors, which allow for selecting cross sections of the image data, are a component of the measuring tool just waiting for the user to maneuver them with a pointing device.

Plaintiff argues that this is a case in which the patentee served as his own lexicographer. In this regard, plaintiff points to three portions of the specification that supposedly redefine the plain meaning of the claim language. The first embodiment described in the '491 patent indicates that 24:33–36:

> Similar to the cutting planes 534 and 546 of the 3D measuring tool routines 532 and 544, the end points 550 of the ruler 549 are magnifying cursors with crosshairs when selected by the user with the pointing device.

Again (23:23–30):

> When selected, the end points 536 of the cutting plane 534 are circular magnifying cursors with crosshairs (similar to that shown in FIG. 17) for accurate positioning of the end points 536 of the cutting plane 534.

And again (23:3–7):

> The 3D surface measuring tool routine 532 is responsive to commands issued with the pointing device 117 such that a user can select and manipulate the end points 536 of the cutting plane 534 to position the cutting plane with respect to the image 533.

In this embodiment, the patent arguably envisions the cursors actualizing after a selection by the user with a pointing device. This does not equate to a case where the patentee has redefined the word blue to mean red. This language does not refer to the phrase "endpoint cursors" at all. Moreover, the embodiment, if read according to plaintiff's view, clashes with the straightforward limitations to the measuring tool in the claim itself. This is impermissible under *Phillips*, *supra*.

Neither party points to any portion of the patent prosecution history as useful for construing "endpoint cursors." This order does not rely on that history in construing this term.

Extrinsic-dictionary evidence, however, bolsters the validity of KLA-Tencor's proposed construction. "Cursor" is defined as "a visual cue (as a flashing rectangle) on a video display that indicates position (as for data entry)." Merriam-Webster, Collegiate Dictionary 307 (11th ed. 2003). GenNano's reading is at odds with this definition of cursor given that, on its view, the microscope user creates the cursor with a pointing device rather than merely moving the

5

cursor around the display with a pointing device. While courts may not rely on dictionary definitions in a vacuum, reference to these definitions is appropriate where, as here, "the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1312–13.

This order thus construes "**endpoint cursors**" as "**visual cues used to define the positions of opposing ends of the measuring tool on an image**," a modification of KLA-Tencor's proposed construction. KLA-Tencor's construction includes the superfluous language "user-manipulated" which would render redundant contextual language surrounding "endpoint cursors" in the claim. The claim already indicates that there is a "measuring tool including endpoint cursors that can be manipulated." Morever, there is no reason to provide a two-part definition for "endpoint cursors." This order simply includes "visual cues," the plain language definition of cursors, in the construction of "endpoint cursors."

## CONCLUSION

The foregoing claim-construction ruling shall govern all subsequent proceedings herein.

**IT IS SO ORDERED.**

Dated: February 22, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6